This is an appeal from a decision of the Alabama Statewide Health Coordinating Council (SHCC).
In April 1990, Dr. Peter Shashy, a urologist, petitioned SHCC, pursuant to the rules of the Alabama State Health Planning Agency (SHPA), to revise the Alabama State Health Plan to recognize a need for mobile lithotripters in certain designated areas of the state. After several hearings on the matter, SHCC approved the proposed amendment. Following the adoption of the amendment by SHCC, the legislative council, pursuant to Ala. Code 1975, § 41-22-23(b), voted to disapprove the amendment. The entire Alabama Legislature did not approve the action of the legislative council during the next legislative session. Therefore, the amendment became effective July 30, 1990. Alabama Renal Stone Institute (Renal Stone) and Springhill Memorial Hospital (Springhill) then petitioned the trial court for preliminary and permanent injunctions, enjoining SHPA from hearing certificate-of-need applications filed in reliance on the amendment. The trial court concluded that the Shashy amendment was validly adopted in substantial compliance with the Alabama Administrative Procedure Act (AAPA). Renal Stone and Springhill appeal.
 I. History
At a meeting on April 12, 1990, SHCC decided to accept for public hearing Dr. Shashy's proposal to amend the lithotripsy chapter of the State Health Plan to provide for mobile renal lithotripters in the most populous metropolitan areas of Alabama. The SHCC's chairman appointed a committee to analyze the proposed amendment.
In accordance with the AAPA, Dr. Shashy's original proposal was duly filed with the Legislative Reference Service. Notice of the Shashy proposal was published in the April 30, 1990, issue of Alabama Administrative Monthly, more than 35 days before SHCC's intended action on the amendment, as required by the AAPA.
On May 30, 1990, the SHCC lithotripsy committee met to discuss the proposed Shashy Amendment. Along with the committee members, parties for and against the amendment were in attendance. Representatives of Renal Stone and Springhill were present and participated in this meeting.
The committee requested the SHPA staff to draft a proposed revision of the Shashy Amendment to address the concerns that were expressed about metropolitan area access to mobile lithotripters. The concerns included the following: the number of urologists required at a particular site to be designated; that no additional capital expenditures be made to acquire more lithotripters; that Birmingham and Mobile be deleted as potential mobile sites, since fixed renal lithotripters were already present and in operation by Renal Stone and Springhill, respectively; *Page 823 
and clarification of the intent and meaning of the Amendment.
On June 13, the committee met and distributed copies of the Shashy Amendment, as revised by the SHPA staff. Renal Stone's representatives were present and participated in the discussion. The record does not reflect whether a representative of Springhill was present, but the record does reflect that Springhill's representative was present on May 30, when the June 13 meeting was announced. Dr. Shashy agreed to the Amendment, as revised. The committee agreed to present the Amendment to the SHCC, with a recommendation that it be adopted.
On June 14, 1990, SHCC held a public hearing. Renal Stone's representatives were present at the hearing and spoke concerning the proposed amendment. Following debate and discussion, SHCC adopted the revised amendment.
 II. Standard of Review
With regard to administrative decisions, we review the trial court's judgment without any presumption of correctness, since the trial court was in no better position to review the agency decision than we are. State HealthPlanning Resource Development Administration v. Rivendell ofAlabama, Inc., 469 So.2d 613 (Ala.Civ.App. 1985). The special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law.Humana Medical Corp. v. State Health Planning DevelopmentAgency, 460 So.2d 1295 (Ala.Civ.App. 1984). Neither this court nor the trial court may substitute its judgment for that of the administrative agency. Alabama Medicaid Agency v.Norred, 497 So.2d 176 (Ala.Civ.App. 1986).
 III. Procedural Issues
Renal Stone and Springhill contend that SHCC was not in substantial compliance with the AAPA regarding the adoption of the revised amendment. Specifically they argue that the notice requirements of Ala. Code 1975, § 41-22-5(a)(1) were not met; the concise statement requirements of Ala. Code 1975, §41-22-5(a)(2) were not met; and that the trial court erred in finding that the Shashy Amendment was validly adopted.
The AAPA sets out, in Ala. Code 1975, § 41-22-5, the requirements that a state agency must meet in order to adopt, amend, or repeal any rule. Section 41-22-5 reads, in pertinent part, as follows:
 (a) Prior to the adoption, amendment, or repeal of any rule, the agency shall:
 (1) Give at least 35 days' notice of its intended action. Date of publication in the Alabama Administrative Monthly shall constitute the date of notice. The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and the time when, the place where, and the manner in which interested persons may present their views thereon. The notice shall be given to the chairman of the legislative committee, as provided in section 41-22-23, and mailed to all persons who pay the cost of such mailing and who have made timely request of the agency for advance notice of its rulemaking proceedings and shall be published, prior to any action thereon, in the Alabama Administrative Monthly. A complete copy of the rule shall be filed with the secretary of the agency and the legislative reference service.
 (2) Afford all interested persons reasonable opportunity to submit data, views, or arguments, orally or in writing. The agency shall consider fully all written and oral submissions respecting the proposed rule. Upon adoption of a rule, the agency, if conflicting views are submitted on the proposed rule, shall issue a concise statement of the principal reasons for and against its adoption, incorporating therein its reasons for overruling any considerations urged against its adoption.
 Inadequate Notice
Notice of the Shashy proposal was published in the April 30, 1990, issue of the Alabama Administrative Monthly, more than 35 days before SHCC's intended action on the amendment. On May 30, 1990, the SHCC lithotripsy committee met to discuss the proposed *Page 824 
Amendment. At that meeting, they determined that some changes should be made concerning the following: that the number of urologists required at a particular site be designated; that no additional capital expenditures be made to acquire more lithotripters; that Birmingham and Mobile be deleted as potential mobile sites, since fixed lithotripters already were present there; and that language be added to clarify the intent and meaning of the amendment.
On June 13, 1990, the committee met and discussed the revised amendment. Further changes to the amendment were suggested, but they were rejected because the committee advised that substantial departure from the Shashy proposal as announced might require re-notice. On June 14, 1990, at a public hearing, SHCC adopted the amendment.
Renal Stone and Springhill argue that the alleged differences between the notice and the replacement rule are substantial. They argue that the alteration of the proposal, after it was noticed, could cause numerous parties to feel they need not participate in the public hearings because the amendment allowed for numerous lithotripsy machines.
The trial court found that Renal Stone and Springhill were present at the meetings and knew of the revisions, and therefore, they were not injured. The trial court also found that SHCC was not required to hold open committee meetings on May 30 and June 13 to consider the revised amendment. The SHCC could have waited and sent the amendment to the SHPA staff for revision after the June 14 meeting and hearing. The trial court found the Shashy Amendment, as revised and adopted, to be a natural outgrowth of the Shashy Amendment as initially proposed. We agree.
Section 41-22-5(a), does not require that the notice of the proposed rule be an exact duplicate of the rule ultimately adopted by SHPA. The notice published by SHCC identified the substance of the proposed amendment to be an addition to the state health plan to recognize a need for mobile lithotripsy services in specific areas in Alabama. It is clear that the changes proposed and adopted in the amendment did not change the substance of the concept as set out in the original proposed rule. The original rule and the revised rule both concern an amendment to the State Health Plan regarding mobile renal lithotripters. The adopted amendment still recognizes a need for mobile lithotripsy service in certain areas; only the Birmingham and Mobile areas were excluded. The adopted amendment continues the concept in the proposed amendment that certain criteria be used to establish worthy applicants. The adopted amendment adds the criteria that no new capital expenditures for mobile lithotripters may be approved, because an adequate number already were in existence.
Courts interpreting the Federal Administrative Procedure Act (FAPA) have considered and decided that an agency may make changes to a proposed rule without publishing new notice. Connecticut Light Power Co. v. Nuclear RegulatoryCommission, 673 F.2d 525 (D.C. Cir. 1982). Alabama courts have not ruled on this issue with respect to the AAPA. However, identical to the notice requirement of the AAPA, the notice requirement of the FAPA requires an agency to provide notice of "either the terms or substance" of the intended action or a "description of the subjects and issues involved." See5 U.S.C. § 553(b)(3) (1970). Courts interpreting the federal provision uniformly have held that an agency does not have to re-notice a proposed regulation, if that agency makes minor changes to the proposed regulation prior to adoption. Connecticut Light,supra; South Terminal Corp. v. EPA, 504 F.2d 646 (1st Cir. 1974).
Here, in the final amendment, the following changes were made to the proposed amendment: language was added to clarify the intent and meaning of the amendment; Birmingham and Mobile were deleted as potential mobile lithotripter sites since fixed lithotripters were already present there; at least two urologists were required at a particular site for it to be designated; and no additional capital expenditures would be made to acquire lithotripters.
Although changes were made, they were in character with the original scheme. We conclude that interested persons were sufficiently *Page 825 
alerted to likely alternatives. The lithotripter committee utilized the comments from its two meetings and the public hearing in shaping the final amendment. We find that notice was sufficient, despite changes to the proposed amendment.
 Failure to Issue a Concise Statement
Renal and Springhill next contend that SHCC failed to comply with the AAPA, in that they did not issue a concise statement of their reasons for adoption of the rule. Renal and Springhill argue that this defect renders the mobile renal lithotripsy rule invalid.
The AAPA requires SHCC, as a state agency, to issue a concise statement of the principal reasons for and against a rule's adoption. Ala. Code 1975, § 41-22-5(a)(2), states in pertinent part:
 "Upon adoption of a rule, the agency, if conflicting views are submitted on the proposed rule, shall issue a concise statement of the principal reasons for and against its adoption, incorporating therein its reasons for overruling any considerations urged against its adoption."
As noted by the trial court's order, the AAPA in Ala. Code 1975, § 41-22-5(a)(2), sets forth no particular requirements as to how an agency is to issue a concise statement. However, case law from other jurisdictions reveals that the reason for an agency issuing a concise statement is to permit judicial review of the agency's action. National Nutritional Foods Ass'n v.Weinberger, 512 F.2d 688 (2nd Cir. 1975).
Although Renal Stone and Springhill argue no concise statement was made, the transcript of the June 14, 1990, public hearing and meeting of SHCC reveals that the committee chairman, Mike Horsley, made a lengthy statement presenting the pros and cons of the amendment and gave the reasons why the amendment should be adopted in spite of the differing arguments for and against the amendment.
Furthermore, the rule-making section of the AAPA incorporates a "substantial compliance" standard. Ala. Code 1975, § 41-22-5(d). The test, therefore, is whether there has been substantial compliance with the requirement for a concise statement. Here, there is a full administrative record upon which to base our review, and the amendment itself contains a statement of reasons. We conclude that the AAPA requirement for a "concise statement" has been met substantially.
 Failure to Substantially Comply with the AAPA
Renal Stone and Springhill next contend that the lithotripsy amendment was not adopted in "substantial compliance" with the AAPA procedures. They argue that the failure to issue both proper notice of the amendment and a concise statement of the reasons for and against the rule's adoption resulted in an invalid enactment of the amendment.
These issues have already been raised and addressed. Based on our earlier analysis, we find no error. The trial court's judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.